**ROBERT E. DERECKTOR OF RHODE ISLAND, INC. and Rhode Island Shipbuilders, Inc., Plaintiffs,**

and

**Marine Power & Equipment, Inc., Intervenor,**

v.

**Neil GOLDSCHMIDT et al., Defendants,**

**Tacoma Boatbuilding Co., Intervenor.**

Civ. A. No. 80–0445.

United States District Court, D. Rhode Island.

Dec. 23, 1980.

---

**1060**

Philip W. Noel, Coffey, McGovern, Noel & Novogroski, Providence, R. I., for plaintiff.

Mark Evens, Dept. of Justice, Washington, D. C., Harry W. Asquith, Providence, R. I., Cary Coen, Providence, R. I., Philip H. Harris, Washington, D. C., for defendants.

## OPINION

FRANCIS J. BOYLE, District Judge.

This action is concerned with a government contract in the amount of $350,000,000 or more and specifically involves the offer form or "Invitation for Bid" (IFB) provided by the Defendant United States Coast Guard. In January, 1980, Defendant Coast Guard sought offers to build nine Coast Guard Cutters. It determined that offers, in order to be responsive, must remain available for acceptance by the Government for a period of at least ninety days. Government Standard Form 33 (SF 33) was the form provided by the Coast Guard to solicit bids. SF 33 normally contains a blank space in which the offeror inserts the

number of days the offer is to remain open for acceptance. SF 33 also contains immediately following the blank space a parenthetical clause which states that a sixty day acceptance period will be presumed unless another figure is inserted. The parenthetical clause was not stricken or modified in the forms provided to bidders. In the form of SF 33, furnished by Defendant Coast Guard, it inserted an asterisk in the center of the blank space. The asterisk referred to a statement below: "Caution see C–21." Paragraph C–21 of the form stated that offers for which acceptance time was less than ninety days would be deemed "nonresponsive" to the solicitation and would be rejected.[1]

Plaintiff Robert E. Derecktor of Rhode Island, Inc. and Rhode Island Shipbuilders, Inc. (Derecktor) and Intervenor Marine Power & Equipment Co., Inc. (Marine) submitted SF 33 as it was furnished to them, i. e., without inserting any figure in the asterisk-occupied space. Intervenor Tacoma Boatbuilding Co. (Tacoma) submitted an SF 33 with "120" typed atop the asterisk. Preparation of a bid obviously involved the expenditure of many thousands of dollars by each of the offerors.

In June, 1980, the bids were opened and it was determined that Derecktor and Marine were the lowest and second lowest bidders, respectively. Tacoma was the third lowest bidder. The bids were:

| | |
|---|---|
| Derecktor | $349,530,719 |
| Marine | $380,854,103 |
| Tacoma | $391,882,517 |
| Avondale Shipyards, Inc. | $407,496,208 |
| Alabama Dry Dock & Ship-<br>building Co. | $417,752,891 |
| Bath Iron Works Corporation | $427,037,689 |

The difference between the lowest bid and Tacoma's bid is $42,351,798. It perhaps

---

1. The form as modified by the Coast Guard stated:

"In compliance with the above, the undersigned agrees if this offer is accepted within *__ calendar days (60 calendar days unless a different period is inserted by the offeror) . . . to furnish any or all items upon which prices are offered at the price set opposite each item, delivered at the designated point(s), within the time specified in the schedule."

" *CAUTION—See Subsection C–21."

Subsection C–21 appears twelve pages thereafter and states:

"Bids offering less than 90 days for acceptance by the Government from the date set for opening will be considered nonresponsive and will be rejected."

need not be said, but it may be said that it is unlikely an asterisk has ever been the occasion for so expensive a difference.

Tacoma filed a protest with the Coast Guard arguing that Derecktor and Marine did not comply with the terms of SF 33 when each failed to insert the minimum "ninety" in the asterisk-occupied space. Both Derecktor and Marine notified the Coast Guard promptly that they intended their offers to be effective for ninety days. The Coast Guard indicated it would uphold the protest determining the two lower bids as "nonresponsive" and awarded the contract to Tacoma. Before the contract was executed, Derecktor filed a protest with the General Accounting Office (GAO) on August 25, 1980. Three days later, on August 28, 1980, and before the GAO acted upon the protest, the Coast Guard executed the contract with Tacoma. On the same date, August 28, 1980, the Coast Guard notified both Derecktor and Marine, by mail, that their bids were determined to be nonresponsive and that they were "ineligible for award." On September 2, 1980, Derecktor was granted a Temporary Restraining Order prohibiting the Coast Guard from paying funds under the contract until it could be determined whether the Coast Guard's actions were proper. Marine and Tacoma sought and were granted intervention in this action.

It should be stated that an issue that is not before the Court is the issue of responsibility, *i. e.*, whether Derecktor or Marine are capable of fulfilling the contract.[2] The parties have agreed that the responsiveness issue should first be considered in order to expedite a determination of this action.

In reviewing the Coast Guard's decision to award the contract to Tacoma, the duty of this Court is to "hold unlawful and set aside agency action ... found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ... [or] (D) without observance of procedure required by law ...." 5 U.S.C. § 706(2)

(1976). Derecktor and Marine argue that the Coast Guard's failure to comply with the Federal Procurement Regulations (FPR) violated both subsections (A) and (D) of § 706, *i. e.*, the Coast Guard's behavior was arbitrary and capricious or otherwise not in accordance with law and without observance of procedure required by law. The alleged failure to comply with Federal Procurement Regulations includes an argument that the Coast Guard should have notified GAO of its intent to make award of the contract while a protest was pending.

The General Accounting Office is an agency created by Congress "independent of the executive departments and under the control and direction of the Comptroller General of the United States." 31 U.S.C. § 41 (1976).

Its regulations in part provided:

When a protest has been filed before award the agency will not make an award prior to resolution of the protest except as provided in the applicable procurement regulations.

4 C.F.R. § 20.4 (1980).

The import of this regulation is that the Coast Guard was barred from making the award to Tacoma unless the applicable procurement regulations permitted the award while the protest was pending.

The applicable procurement regulations provide:

Where a protest has been lodged with the procuring agency, the views of GAO regarding the protest should be obtained before award whenever such action is considered to be desirable. Where it is known that a protest against the making of an award has been lodged directly with GAO, a determination to make award under § 1–2.407–8(b)(4) must be approved at an appropriate level above that of the contracting officer, in accordance with agency procedures. While award need not be withheld pending final disposition by GAO of a protest, a notice of intent to

2. In addition to being "responsive" to an IFB, a successful bidder must also be determined to

be "responsible." 41 U.S.C. § 253(b) (1976).

make award in such circumstances shall be furnished GAO, and formal or informal advice should be obtained concerning the current status of the case prior to making the award.

41 C.F.R. § 1–2.407–8(b)(3) (1979).

It is admitted that the Coast Guard failed to give the notice of intent to award while the protest was pending and failed to seek formal or informal advice concerning the current status of the case prior to award.

While an argument might be made that the requirement that the Coast Guard *should* seek advice concerning the current status of the protest is not mandatory, the same cannot be said of the requirement to give notice of intent to make the award. The regulations require that the notice of intent to make the award *shall* be furnished prior to making the award.

The relationship between procurement determinations and protests to GAO concerning those determinations is apparent when the provisions of 31 U.S.C. § 1176 are considered. Section 1176 requires that whenever the GAO has made a report which contains recommendations to the head of any Federal Agency, the agency shall submit a written statement within sixty days of the date of the recommendation to the House and Senate Committee on Government Operations, and, a further written statement setting forth the action taken with respect to the recommendations within sixty days of the first request for appropriations to the Senate and House Committees on Appropriations after the date of the recommendation.

One obvious purpose of § 1176 is to inform Congress of agency reactions to GAO recommendations in the exercise of the considerable discretion vested in agencies to purchase goods and services. An obvious effect is that agency performance can be considered in terms of future appropriations based upon the agencies past performance. A further effect is that agencies must consider GAO recommendations seriously. The expertise of GAO was described in *Wheelabrator Corp. v. Chafee*, 455 F.2d 1306, 1314 (D.C.Cir. 1971).

The GAO has established a corps of officials concerned with compliance by procurement officials with provisions of applicable statutes and regulations. Its rulings provide review by an agency that is independent of the executive departments engaged in the procurement. The volume of its bid protest business has been substantial, and while the proportion of rulings recommending cancellations of executed contracts is small, there is not insignificant record of "corrective action" required by the GAO, in addition to corrective action stimulated within the Executive Departments to obviate future recurrence of the problems.

The Congress has established a method of checks and balances which should not lightly be upset.

The Coast Guard was faced with a need to make its determination within ninety days of the date set for opening of the bids by virtue of § C–21 of the Invitation for Bid. The bids were opened on June 3, 1980. The ninetieth day was September 1, 1980, a legal holiday. Although Tacoma's bid was available by its expressed terms for 120 days, any acceptance after ninety days could raise questions concerning those lower bidders to whom the ninety day period was applicable. By the end of August, 1980, it must have been apparent to those concerned that prompt action was necessary in order to obtain the much needed vessels. The timing problem was exacerbated when Derecktor filed a protest with GAO on August 25, 1980, which stated that the Coast Guard had not yet made a determination of Tacoma's protest. The Coast Guard was not to be left waiting at the dock. Within three days, the Coast Guard, on the same day awarded the contract to Tacoma and informed both Derecktor and Marine that their bids were nonresponsive. At the time it was aware of Derecktor's protest to GAO. Whether due to oversight or otherwise, it did not risk the possibility of a delay by giving notice to GAO of its intent to award the contract, avoiding completely the risk that GAO might suggest a different course of action.

Whatever the basis for the failure to notify the GAO, the effect is an avoidance of the regulations which prohibit award of a contract while a protest to GAO is pending without prior notice to GAO. By avoiding the possibility of a recommendation of GAO, the Coast Guard was able to award a contract to the third lowest bidder, whose bid was $42,000,000 more than the lowest bid received. Because there was no GAO recommendation, no explanation to Congress was then required. Of course an explanation might be later required after the GAO ruled upon the pending Derecktor protest.

■ Although the foregoing is the bleakest explication of the circumstances, and though the effort was undoubtedly pursued with a view to procure urgently needed ships to satisfy the ever increasing responsibility of the agency, the failure to comply with the regulations cannot be considered to be in accord with law or in observance of procedure required by law, and, is therefore a violation of 5 U.S.C. § 706(2)(A) and (D). Agency regulations have the force and effect of law. *Paul v. United States*, 371 U.S. 245, 255, 83 S.Ct. 426, 433, 9 L.Ed.2d 292 (1963); *Ainslie Corp. v. Middendorf*, 381 F.Supp. 305, 308 (D.Mass.1974). Agency action not in accord with regulations is not in accord with law. *Bradley v. Weinberger*, 483 F.2d 410, 414 n. 2 (1st Cir. 1973). The Coast Guard's action in awarding the contract to Tacoma must be held to be unlawful and must be set aside.

The fact that GAO later rendered an opinion that both Derecktor's and Marine's bids were responsive does not affect the *fait accompli* with which they are now presented and for which both seek a remedy for correction. The award to Tacoma must be determined to be unlawful. The subsequent GAO Opinion does not render this issue moot.

Quite apart from the issue arising from the failure of the Coast Guard to comply with procurement regulations, there is the issue of the asserted ambiguity of the Invitation for Bid. There is much to be said for

substantial deference to agency action. *See M. Steinthal & Co. v. Seamans*, 455 F.2d 1289 (D.C.Cir. 1971). This Court opted for the approach suggested by Judge Obedorfer in *Aero Corporation v. Department of the Navy*, 493 F.Supp. 558 (D.D.C.1980). It requested that GAO provide its opinion upon the issue of ambiguity on an expedited basis. GAO responded promptly to this request. The GAO concluded both Derecktor's and Marine's bids were responsive to the Coast Guard's IFB. *Matter of Robert E. Derecktor of Rhode Island*, B–199445.4; *Marine Power & Equipment, Co., Inc.*, B–199445.5 (November 17, 1980). In deciding the issue, GAO reviewed its earlier opinions and quoted extensively from *Matter of R & R Contractors*, 52 Comp.Gen. 842 (1973). That quotation merits repetition:

"* * * where an invitation contains language specifying a bid acceptance period and another separate provision located elsewhere in the invitation sets forth a minimum bid acceptance period, the two provisions should be cross-referenced in such manner as to specifically direct bidders' attention to the fact that insertion of a shorter period will cause the bid to be rejected. * * *

\* \* \* \* \* \*

"* * * the Government has the initial responsibility of stating what is required in reasonably clear fashion. Communication of the minimum bid acceptance period under the instant solicitations * * * was clearly inadequate, as exemplified by the overwhelming number of bidders who obviously either failed to appreciate the 90-day requirement or failed to take proper steps to establish responsiveness to that requirement.

"We have observed that a sense of fairness and impartiality should imbue the Federal procurement effort. These solicitations reasonably must be viewed as having contained a trap to ensnare the average bidder into a state of nonresponsiveness as to the bid acceptance period imposed. We must assume that only a grossly misleading invitation would have caused almost all bidders—who expended

considerable time and money to compete for the Government's business—to fail to hold their bids open as required."

*Derecktor* at 3–4 (quoting *R & R* at 845–46).

The GAO concluded:

Thus we believe the asterisk in the SF 33 provision and the cross-reference to the 90-day provision effectively negated the 60-day language of the SF 33 provision and in its place imposed a 90-day bid acceptance period to which bidders committed themselves by signing their bids, without any need for them to specifically insert "90" on the SF 33.

*Derecktor* at 5.

What has occurred in this action is proof of the wisdom of the regulations. Had the Defendant Coast Guard complied with the regulations, the delay occasioned by this action might well have been avoided.

Initially, the Coast Guard announced that all bids were responsive. The determination that the two lowest bids were not responsive was made thereafter, and notice given to the disqualified bidders on the same date that the Coast Guard awarded the contract. The testimony was that the award was made to the third lowest bidder after both general counsel and staff of the Department of Transportation responsible for compliance with procurement regulations had reviewed the circumstances and provided both oral and written opinions, and after a Coast Guard analysis of the disparity among the bids had been reviewed and accepted. The only basis for the disqualification of the two lowest bidders continued to be that they had failed to submit a bid which was available for Government acceptance for a period of 90 days. And the sole basis for this conclusion was the failure to insert a number 90 or higher on the cover sheet of an 84 page document.

According to affidavits on file, Derecktor expended nearly $170,000 and Marine expended in excess of $230,000 in order to prepare their respective bids.

Standard Form 33 is prescribed at 41 C.F.R. § 1–16.901–33 (1977). The provision in issue in this action appears at Page 1 of the form to the effect that the bidder agrees to furnish the items or services bid, "if this offer is accepted within ＿＿＿＿ calendar days (60 calendar days unless a different period is inserted by the offeror) . . . ." 41 C.F.R. § 1–2.201(a) (1977) provides that invitations to bid construction contracts "shall" contain the following information if applicable to the procurement involved.

(15) When considered necessary by the contracting officer, a requirement that all bids must allow a period for acceptance by the Government of not less than a minimum period stipulated in the invitation for bids, and that bids offered less than the minimum stipulated acceptance periods will be rejected. The minimum period so stipulated shall be no more than reasonably required for evaluation of bids and other pre-award processing. To accomplish the foregoing, a paragraph substantially as follows may be included in the invitation for bids:

*Bids acceptance period.* Bids offering less than ＿＿ days for acceptance by the Government from the date set for opening will be considered nonresponsive and will be rejected.

Subsection C–21 of the bid form submitted by the Coast Guard to the prospective bidders is verbatim the suggested form found in the regulations. Such a statement was obviously considered necessary by the contracting officer, as a statement of the basis upon which bids would be deemed to be nonresponsive for failure to meet the minimum stipulated acceptance period. There is no suggestion that the word "CAUTION" is an appropriate modification of the form. Nor is there any suggestion that an asterisk be placed in the blank space provided for the insertion of a different number of days on Page 1 of the standard form. Both the asterisk and the caution were the innovations made upon the form by the Coast Guard.

The burden of challenging the legality of procurement decisions is stated in *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1169

(D.C.Cir.1973); that it must be shown either:

1. the procurement officials decision on matters committed primarily to his own discretion had no rational basis, or

2. the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations.

These requirements were initially stated in *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C.Cir.1971). The court reasoned that the discretion typically reposed in procurement officials must be taken into account

not only to the evaluation of bids submitted in response to a solicitation but also to determination by the agency with respect to the application of technical, and often esoteric, regulations to the complications of individual procurements.... If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as the proper administration and application of the procurement regulations. [footnote omitted] Otherwise, the courts would become the forum for all manner of objections to procurement decisions—objections that counsel can readily relate to the language of some provision or other in some procurement regulation—and would be propelled without adequate preparation into a tangle of complex statutory and decisional rules.

*Id.* at 1301–02.

The court also discussed the possible interference with prompt procurement in the event of lengthy litigation, the right of the Government in any event to terminate a contract once entered into for the convenience of the Government and the participation of GAO in the procurement process. The court concluded:

The court must refrain from judicial intervention into the procurement process unless the actions of the executive officials are without any rational basis.

*Id.* at 1306.

This rule has been adopted in a number of circuits. *Sea-Land Service, Inc. v. Brown,* 600 F.2d 429, 434 (3d Cir. 1979); *Airco, Inc. v. Energy Research & Development Administration,* 528 F.2d 1294, 1296 (7th Cir. 1975); *Hayes International Corp. v. McLucas,* 509 F.2d 247, 258 (5th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975). *See John Danforth Co. v. Veterans Administration,* 461 F.Supp. 1062, 1070 (W.D.N.Y.1978); *Pace Co. v. Department of the Army,* 344 F.Supp. 787, 790 (W.D.Tenn. 1971).

The precise issue presented is the rationality of the determination that both Derecktor's and Marine's bids were nonresponsive, which in turn provided the basis for the award to Tacoma. If the bids of the two lowest bidders had been determined to be responsive, then it would still have been necessary to determine their respective abilities to perform the contract. However, upon being determined to be nonresponsive, the two lowest bidders were *ipso facto* disqualified. The defect was a failure to insert a number in a blank space which was already in part occupied by an asterisk.

At the very least a rational basis must be one based upon the exercise of reason and judgment, which takes into consideration the circumstances and achieves a result which whether appearing to be right or wrong, is arrived at by a process of reasoning. The circumstances in this action were two bids by experienced bidders who had expended much effort and money to submit a bid upon a substantial Government contract and who were found to have been disqualified by their own inaction by submitting a bid open for acceptance for sixty days when the bid forms required a bid acceptance period of ninety days. It defies reason and judgment to come to the conclusion in these circumstances that the bidders deliberately intended to submit a nonresponsive bid. Of course, the intent of the bidders is not the controlling factor, rather it is the finding by the contracting officer that that was their intent that lacks a rational basis.

This conclusion by the contracting officer also rests on the premise that the form

furnished as modified required automatic disqualification by reason of the failure to strike or otherwise expressly modify the automatic sixty day period. Automatic disqualification cannot be rationally asserted as the Coast Guard intent. The Coast Guard will not be charged with a purpose to create a trap for all except those who happened to be fortunate, or those who had a compulsion to complete every blank space on a form whether necessary or not.

■ After giving appropriate heed to the admonitions of those courts which have ruled that courts should be hesitant to interfere with the orderly procurement process and the appropriate discretion of procurement officials, this is a situation of a clear abuse of that discretion, and lacking a reasonable basis. The decision must be said to be arbitrary and capricious, not based upon reason or judgment and which results in a conclusion which more likely reflects a knee-jerk reaction rather than a use of the reasoning process.

The Coast Guard argues that the form as modified by it was at worst ambiguous, that is, that it was capable of more than one reasonable construction *see, e. g. M. Steinthal & Co. v. Seamans*, 455 F.2d at 1299–1300, that it applied one of the reasonable constructions, and therefore, its determination is not irrational, and must be sustained. There would be merit to this argument, if the question were one of selection among ambiguous constructions. That is not the issue. The Coast Guard's construction of the provisions requires a conclusion that the form was misleading. That construction must be rejected. There is but one construction that may reasonably be placed upon the bids of the two lowest bidders, and that is that both provided for a ninety day period of acceptance in accord with the provisions of subsection C–21. The blank space had already been modified when they received the bid form. They were cautioned by the asterisk reference that the bid acceptance period was not less than ninety days. There was nothing further for them to do. The Coast Guard was assured that whatever bids were submitted

were available for the minimum period it required by its modification of the form. A different time other than sixty days had already been inserted in the form when it was delivered to the bidders. Any other construction is a complete absurdity, without reason and without a rational basis. Up to this point, there has been no consideration given to the fact that there was a more than $42,000,000 difference between the lowest bid and the third lowest bidder to whom the contract was awarded. Although the amount of the difference cannot suggest the application of differing rules varying with the size of the disparity, it is certainly one of the circumstances to be considered when the issue is whether the determination was rational. The disparity should have alerted the decision maker that there should be some rational relationship between the asserted deficiency and the consequences of that asserted deficiency. Certainly important determinations are governed by a higher degree of rationality than insignificant determinations. There must at least be some rational relationship. Here there is none.

It is necessary to recognize that the procurement of Coast Guard Cutters is the appropriate responsibility of the Coast Guard. It is not in these circumstances, the province of this Court to make awards of Coast Guard contracts. As stated in *Simpson Electric Company v. Seamans*, 317 F.Supp. 684 (D.D.C.1970) at page 688:

The Court is hesitant to utilize its injunctive powers for yet another reason. Neither the Administrative Procedure Act nor *Scanwell Laboratories, supra,* can be responsibly read, whether singly or together, as contemplating that the Court in all disputed cases will direct the course of Government contracting. As already indicated, the scope of review is narrow, and once the rights of litigants are declared, the Government should in the normal case be free to make choices as to whether it will run the risk of damages, open the contract for rebidding, resolve the dispute by negotiation, or meet its needs, if they still exist, in some other fashion. The variety and complexity of

situations that will be presented make it abundantly apparent that in the usual case the courts have only a limited function in this area.

Although *Simpson Electric* involved somewhat different circumstances, the court's comment concerning the appropriateness of declaratory relief and the inadvisability of injunctive relief is instructive. Further, there is nothing to suggest that Defendants will not responsibly comply with declarative relief.

At this point, in this litigation, it is unnecessary to enjoin performance of the contract. Since the Defendant Coast Guard clearly violated procurement regulations in its award of the contract to Tacoma, a declaration that the award is invalid is the appropriate remedy. This is particularly appropriate because the limited issue before this Court at this time relates to the responsiveness of the Plaintiffs' bid in light of the Defendant Coast Guard's failure to comply with procurement regulations and its improvident determination that the two lowest bids were nonresponsive.

Plaintiffs may present a form of judgment declaring the award of Contract No. CG–011738–A to Tacoma Boatbuilding Co. on August 28, 1980, to be invalid.

SO ORDERED.