B.G. BAILEY CONSTRUCTION CO.

v.

John H. NORBERG, Tax Administrator.

No. 84–425–M.P.

Supreme Court of Rhode Island.

April 24, 1987.

William A. Curran, James T. Murphy, Hanson, Curran & Parks, Providence, for petitioner.

Marcia McGair Ippolito, Chief Legal Officer (Taxation), Providence, for respondent.

## OPINION

WEISBERGER, Justice.

This is a petition for certiorari wherein B.G. Bailey Construction Co. (taxpayer), seeks review of a decision of the District Court upholding a determination by the tax administrator assessing a use tax against the taxpayer on materials purchased by it in connection with the construction of an aircraft hangar at Theodore Francis Greene State Airport. We quash the judgment of the District Court.

Amica Mutual Insurance Co. (Amica) contracted with the state to build a hangar that would be owned by the state and then leased to Amica. Taxpayer contracted with Amica to perform the actual construction work upon the subject hangar. The lease agreement between the state and Amica required Amica, in addition to constructing the hangar, to excavate and remove old underground wiring conduits and manholes. Taxpayer performed this work as well. The new installations were to become part of the airport's wiring system, for general use of the airfield. The lease contract further provided that title to all fixed improvements installed by Amica would vest in the state immediately upon completion of their construction.

The facts relating to this petition are stated in the findings adopted by the tax administrator.

"1. B.G. Bailey Construction Co. (taxpayer) constructed an aircraft hangar at the State Airport in Warwick, Rhode Island, pursuant to a contract with Amica Mutual Insurance Co.

"2. In addition to the construction of the aircraft hangar itself, a substantial amount of preparatory work had to be done, such as digging up and relocating existing wiring and/or conduits, bringing in oversized conduits for additional electrical power, etc.

"3. The preparatory work done by the taxpayer was required by the Department of Transportation, Airport Division, and benefited not only Amica but the entire airport facility.

"4. Said Department of Transportation had long sought to do the so-called preparatory work itself but did not have the funding to do so.

"5. The Department of Transportation informed Amica Mutual Insurance Co. that if it advanced the necessary

funds for the preparatory work, the state would keep a record and if someone else decided to build a hangar adjacent thereto, that builder would pay back Amica its pro rata share of the cost of the preparatory work.

"6. To date, Amica Mutual Insurance Co. has not been reimbursed for any funds spent on the preparatory work.

"7. The Department of Transportation oversaw the construction project.

"8. The materials used on the preparatory work and/or hangar were purchased extax by the taxpayer.

"9. The taxpayer was reimbursed for purchases of materials by Amica Mutual Insurance Co.

"10. The testimony of both the auditor and witnesses for the taxpayer was that the taxpayer was purchasing construction materials extax by using a tax exempt number (14712) which was issued to the Rhode Island Division of Purchasing.

" *11. Tax exempt numbers do not exceed four (4) digits.

" *12. Tax exempt numbers are not issued to the State of Rhode Island or its agencies.

"13. Materials purchased by the taxpayer for the project were placed in and affixed to the realty and became permanent improvements thereto.

"14. All improvements to the realty, including the aircraft hangar, became the property of the State of Rhode Island upon completion of construction.

"15. The hangar was completed in the summer of 1982 and Amica Mutual Insurance Co. has been leasing space in said hangar.

"16. An audit was conducted by the Division of Taxation on the taxpayer which resulted in an additional measure of tax of $89,256.38 being assessed to the taxpayer.

"17. The tax imposed was a use tax based upon the taxpayer's use of materials used in the construction of the hangar and preparatory work.

"18. In assessing the materials used, the auditor could not distinguish between materials used in the preparatory work and materials used in the construction of the hangar.

"19. The taxpayer did not file use tax returns on the items which it purchased.

"20. A Notice of Deficiency Determination dated March 18, 1983 was directed to the taxpayer as follows:

| | |
|---|---|
| Tax | $5,355.38 |
| Interest | 1,186.22 |
| Penalty | 535.54 |
| TOTAL | $7,077.14 |

" *Official notice taken of this fact."

General Laws 1956 (1980 Reenactment) § 44–18–21 imposes the use tax described in § 44–18–20 on "[e]very person storing, using, or otherwise consuming in this state tangible personal property * * * purchased from a retailer * * *." The taxpayer contends that the hearing officer erred in determining that it did not qualify for an exemption from the use tax under Regulation C of the *Regulations and Rules Issued by the Tax Administrator under the Sales and Use Tax Law.* We agree.

Regulation C in pertinent part provides as follows:

"Contractors and Subcontractors—'Regulation C'—Article I.—Contractors—In General.—The term 'contractor' as used herein includes both *contractors and subcontractors* and, among others, building, electrical, plumbing, heating, painting, decorating, paper hanging, air conditioning, ventilating, insulating, sheet metal, steel, masonry, carpentry, plastering, cement, road, bridge, landscape and roofing contractors or subcontractors.

The term 'construction contract,' as used herein, means a contract for the repair, alteration, improvement, remodeling or construction of real property.

* * * * * *

(5) Contracts with exempt Agencies, Institutions and Organizations

In the case of contracts entered into with the Federal Government, its agencies or instrumentalities, this state, its agencies, any city, town, district, or other political subdivision of this state, hospitals not operated for profit, educational institutions not operated for profit, churches,

orphanages, and other institutions not operated for profit, churches, orphanages, and other institutions or organizations operated exclusively for religious or charitable purposes, the contractor may purchase such materials and supplies as are to be physically incorporated in and become a permanent part of the projects being performed under such contracts without payment of the tax."

The tax administrator is statutorily authorized to promulgate rules and regulations necessary for proper administration and enforcement of the state tax laws. Section 44-1-4. Because the statute expressly confers this power on the tax administrator, regulations made pursuant to § 44-1-4 have the force of law. *Batterton v. Francis,* 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977); *Robert E. Derecktor of Rhode Island, Inc. v. Goldschmidt,* 506 F.Supp. 1059 (D.R.I.1980); *Lerner v. Gill,* 463 A.2d 1352 (R.I.1983). Regulation C therefore is as binding on this court as a valid statute. *See Lerner,* 463 A.2d at 1358.

Both the hearing officer and the District Court concluded that Regulation C was inapplicable to taxpayer since taxpayer did not contract directly with the state. Regulation C applies, however, to subcontractors as well as to contractors. The fact that taxpayer did not contract directly with the state is of no significance. Since Amica contracted with the state to perform construction work for the state, Amica was, in substance, a contractor for the state. Had Amica performed the work itself it, would unquestionably have been entitled to an exemption.

All materials purchased by taxpayer for the construction project were placed in and affixed to the realty. All improvements to the realty became the property of the state upon completion of construction. The taxpayer contracted with Amica to perform construction work required under Amica's agreement with the state. In so doing, taxpayer acted as a subcontractor for Amica and is entitled to the Regulation C exemption.

The taxpayer contends that § 44-18-30(I) also affords it an exemption from the use tax imposed by §§ 44-18-20 and 44-18-21. Although the statute is unclear about its applicability to the taxpayer in the circumstances of this case, it is unnecessary to construe its provisions because Regulation C is specifically designed to clarify the exemption status of contractors and subcontractors acting for the benefit of the state. Furthermore, because we have determined that taxpayer is exempt from the use tax pursuant to Regulation C, we need not address taxpayer's assertion that the hearing officer erred in taking official notice of certain facts.

For the reasons stated, the petition for certiorari is granted and the judgment below is quashed. The papers in the case may be remanded to the District Court with our decision endorsed thereon.