**AINSLIE CORPORATION**

v.

**J. William MIDDENDORF, Acting Secretary of the Navy, et al.**

**Civ. A. No. 74–3035–C.**

United States District Court,
D. Massachusetts.

Sept. 10, 1974.

Robert C. Gerrard, Eric E. Mulloy, Powers & Hall, Boston, Mass., for plaintiff.

Leon J. Glazerman, Lola Dickerman, Widett & Widett, Boston, Mass., James N. Gabriel, U. S. Atty., William A. Brown, Asst. U. S. Atty., for defendants.

## MEMORANDUM and ORDER

CAFFREY, Chief Judge.

This is a civil action for declaratory and equitable relief. Plaintiff Ainslie Corporation (Ainslie) is a corporation organized under the laws of the Commonwealth of Massachusetts. Defendants are J. William Middendorf, Acting Secretary of the Navy; Commander D. Linehan, Commander of Procurement, Naval Regional Procurement Office, Long Beach, California; and Craig Systems Corporation (Craig), a corporation organized under the laws of the Commonwealth of Massachusetts.

The matter came before the court upon plaintiff's application for a temporary restraining order and preliminary injunction restraining defendants from proceeding further with the award of a Government procurement contract for the manufacture of certain radar-sonar electronic equipment.

The following facts are taken as true for purposes of this memorandum: On March 27, 1974, defendant Linehan caused the opening of a formal Invitation for Bids (IFB) for a procurement contract. The IFB was denominated Solicitation No. N00123–74–B–1758. On June 13, 1974, plaintiff submitted its bid to the Naval Regional Procurement Office. A bid was also submitted by defendant Craig. On June 14, Craig submitted to the General Accounting Office, Washington, D.C., a formal protest to the form of the Ainslie bid. On August 5, 1974, Ainslie learned for the first time that its bid was the low bid on the contract and that Craig had submitted a formal protest (notice of which was never sent to Ainslie). On August 6, 1974, Ainslie submitted its own protest to the "proposed" award of the contract to Craig. In fact, the contract had already been awarded to Craig on July 25, 1974, before Ainslie even learned of Craig's protest. On August 8, 1974, Ainslie was formally notified by Commander Linehan that its bid had been rejected in favor of the Craig bid and that the contract had been awarded to Craig. On August 5 it was also disclosed that this action by Commander Linehan was in response to the protest filed by Craig.

■■ It is established law in this Circuit and elsewhere that a plaintiff seeking a preliminary injunction must satisfy two requirements. It must show that it will sustain irreparable harm if the injunctive relief is not granted, Automatic Radio Mfg. Co. v. Ford Motor Co., 390 F.2d 113 (1 Cir. 1968), and it must also show a probability of success on the merits. It is settled law that lack

of an adequate remedy at law is a substantial element of irreparable harm. Celebrity, Inc. v. Trina, 264 F.2d 956 (1 Cir. 1959).

In evaluating the first of these requirements on the record of this case, it is conceded that plaintiff does have an action for monetary damages in the United States Court of Claims. However, this remedy is more illusory than real because of prior decisions to the effect that the money damages recoverable against the United States are limited to bid preparation costs and may not include loss of profits that the bidder would have made had it been awarded the contract in question. Keco Industries, Inc. v. United States, 428 F.2d 1233, 192 Ct.Cl. 773 (1970); Heyer Products Co. v. United States, 140 F. Supp. 409, 135 Ct.Cl. 63 (1956). That this remedy in the Court of Claims is inadequate has been squarely ruled in General Electric Co. v. Seamans, 340 F. Supp. 636 (D.D.C.1972), where the court held that the action for damages in the Court of Claims was an inadequate remedy because it did not fully compensate the loss sustained by the frustrated bidder. Id. at 640. See, also, Pace Co., Div. of Ambac Industries, Inc. v. Department of the Army, 344 F.Supp. 787 (W.D.Tenn.1971), order vacated on other grounds (overriding national security interest) 453 F.2d 890 (1971), where the court issued a preliminary injunction on the ground that irreparable harm would result to a frustrated bidder if the Government was not enjoined. Id. at 790.

■ Accordingly, I rule that plaintiff has demonstrated the likelihood that it will sustain irreparable injury if the injunction does not issue.

■ In considering the remainder of the burden which plaintiff must carry in order to obtain a preliminary injunction, i. e., probability of success on the merits, the court is aware that the balance of hardships on the competing parties must be kept in mind in defining the degree to which plaintiff must show probability of success on the merits. See International Ass'n. of Machinists and Aerospace Workers v. Northeast Airlines, Inc., 473 F.2d 549 (1 Cir. 1972). In that case, the Court of Appeals indicated, in substance, that the greater the potential damages to the defendant, if enjoined, the heavier the burden on the plaintiff to show a high probability of success on the merits. Id. at 554. Conversely, the Court of Appeals for the Second Circuit has ruled that if the degree of prejudice from an adverse ruling will fall far more heavily on the plaintiff, then plaintiff's burden of demonstrating probable success on the merits lessens. Unicorn Management Corp. v. Koppers Co., 366 F.2d 199, 205 (2 Cir. 1966). The situation was succinctly summarized in a Note, Developments in the Law—Injunctions, Harv.L.Rev. 994, 1056 (1965):

"Clear evidence of irreparable injury should result in a less stringent requirement of certainty of victory; greater certainty of victory should result in a less stringent requirement of proof of irreparable injury."

■ In the instant case no facts have been adduced to take the case out of the operation of the ordinary rules of law relative to irreparable injury and probability of success on the merits. The injury to defendants, if enjoined, would appear to be proportionate to the injury to plaintiff if an injunction is denied. There has been no showing herein of any overriding public interest which would mandate refusal of an injunction. Accordingly, I rule that plaintiff is required merely to meet the ordinary test of reasonable probability of finally prevailing on the merits. Tuxworth v. Froehlke, 449 F.2d 763, 764 (1 Cir. 1971).

■■ On the basis of Scanwell Laboratories v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (D.C.Cir.1970), I rule that plaintiff has standing to maintain its suit under Section 702 of the Administrative Procedure Act, 5 U.S.C. A. § 702. I further rule that the standard of review is that enunciated in 5 U.

S.C.A. § 706(2)(A), i. e., whether the action of the federal defendants was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." It has been held that agency action which violates a published regulation is "not in accordance with law" within the meaning of 5 U.S.C.A. § 706(2)(A). Bradley v. Weinberger, 483 F.2d 410, 414 (1 Cir. 1973).

■ The Armed Services Procurement Regulations (ASPR), 32 C.F.R. Chapter I, Part 2 (1973) govern bidding procedures and awards for Armed Services procurement contracts. These regulations have the force of law. Paul v. United States, 371 U.S. 245, 255, 83 S. Ct. 426, 9 L.Ed.2d 292 (1963). ASPR, § 2.407–8 (32 C.F.R. 2.407–8 (1973)), provides in pertinent part:

> (a) *General* (1) Contracting officers shall consider all protests or objections to the award of a contract, whether submitted before or after award. . . . An interested party wishing to protest to the Comptroller General of the United States against an award of a contract should do so in accordance with General Accounting Office Regulations, 4 C.F.R. Part 20.
>
> \* \* \* \* \* \*
>
> (3) *Other persons, including bidders, involved in or affected by the protest shall be given notice of the protest. They shall also be advised that they may submit their views and relevant information to the contracting officer within a specified period of time.* . . .
>
> (b) *Protests before award.* If award has not been made, the contracting officer may require that written confirmation of an oral protest be submitted by a specified time and inform the protester that award will be withheld until the specified time. . . .
> (1) *In appropriate cases, notice of a protest will be given to bidders affected thereby.* For example, when a protest against the making of an award is received and the contracting officer determines to withhold the award

pending disposition of the protest, the bidders whose bids might become eligible for award should be informed of the protest and requested, before expiration of the time for acceptance of their bids, to extend the time for acceptance. . . .

In analyzing whether or not this regulation was violated herein, the following facts, which are not contested, are taken as true: Bids for this contract were publicly opened on June 13, 1974. Ainslie's bid was the lowest bid, being $242,120 below that of Craig, the next lowest bidder. On the day following the opening of the bids, June 14, 1974, Craig submitted *ex parte* a formal protest against the Ainslie bid to the Naval Regional Procurement Office, Long Beach, California, the issuer of the Invitation for Bids. On July 25, 1974, the Navy issued a telegraphic notice of award of the bid to Craig, and on August 5, 1974 Ainslie learned, via a telephone communication with Commander Linehan that notwithstanding the fact that it was the lowest bidder by over $200,000, Commander Linehan was about to award the contract to Craig. On August 8, the Navy gave formal notice to Ainslie that its bid had been rejected as nonresponsive and that the contract had been awarded to Craig.

■ It is obvious that the above facts establish a clear failure by the Navy to comply with Subsection (a)(3) of § 2.-407–8 of the ASPR. Subsection (a)(3) clearly and unambiguously mandates that when a protest is filed bidders involved in or affected by the protest shall be given notice of the protest and advised that they may submit relevant information to the contracting officer. The verb "shall" in the regulation is mandatory and despite this the Navy did not comply with Subsection (a)(3) and did not give Ainslie notice of the protest and an opportunity to submit relevant information, despite the fact that Ainslie as the low bidder by over $200,000 was obviously "involved in and affected by" the protest.

On the basis of the foregoing alone, I rule that Ainslie has shown a probability of success on the merits and has shown a probability that a finding will be made that Subsection (a)(3) was violated by the contracting officer, and therefore that the conduct of the federal defendants was "not in accordance with the law" within the meaning of Section 706(2)(A).

To the extent that there is an apparent conflict between Subsection (b)(1) of ASPR 2.407–8 and the provisions of Subsection (a)(3) thereof, I rule that a construction of (b)(1) which would undercut or contradict the mandatory language of Subsection (a)(3) should not be adopted since it would frustrate the obvious intention of according due process to all bidders on public contracts.

In addition to the above grounds on the basis of which a ruling has been made that plaintiff has shown a probability of success on the merits, there are present in this case additional factors on the basis of which the same ruling may properly be made. It would appear that the IFB as released by the Navy was clearly ambiguous as to the number of units to be covered by the contract. This ambiguity flows from the fact that the original IFB was amended and that the amendment changed the quantity of preproduction units from 2 to 1. This amendment, not unreasonably, was interpreted by Ainslie as reducing the total number of units to be bid on from 20 to 19. Craig, on the other hand, assumed that the total quantity remained unchanged.

It thus appears that the instant case is one where at least two of the competing bidders interpreted the Invitation differently. Where such different interpretations are made by competing bidders, the Comptroller General, in an unpublished opinion, B–157692 (1965), has ruled that the situation is strongly indicative of ambiguity. See McBride and Wachtel, Government Contracts, Vol. 1–A, at p. 10–102. Accordingly, I rule that plaintiff has demonstrated a strong probability of establishing a second ground on the basis of which the conduct of the federal defendants can be shown to have conflicted with the published regulation, i. e., 32 C.F.R. 2.404–1(b), which if established would render their conduct "not in accordance with the law."

On the basis of the foregoing, I rule that plaintiff has sustained its twin burden of proving likelihood of irreparable injury and probability of success on the merits and that defendants have made no countervailing showing which would warrant the denial of the injunctive relief sought. Consequently, it is

Ordered that all parties defendant are enjoined as follows:

(1) The award of the subject contract to Craig is set aside until further order of this court.

(2) The federal defendants and Craig are temporarily restrained until further order of this court from awarding any contract or proceeding with any work or contract relating to the subject matter of Solicitation No. N00123–74–B–1758.