COLLINS & COMPANY, GENERAL CONTRACTORS, INC., Plaintiff,

v.

W. Graham CLAYTOR, Jr., Secretary of the Navy, Defendant.

Civ. A. No. C79–1601A.

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 19, 1979.

Trammell E. Vickery, John G. Parker, Jane C. Fugate, Atlanta, Ga., for plaintiff; Hansell, Post, Brandon & Dorsey, Atlanta, Ga., of counsel.

William L. Harper, U.S. Atty., Oliver B. Dickins, Jr., Asst. U.S. Atty., Atlanta, Ga., for defendant.

## MEMORANDUM OPINION

VINING, District Judge.

This action was filed by the plaintiff to enjoin the construction of three buildings at the nuclear submarine base at Kings Bay, Georgia. The construction of these buildings has been set aside for small business contractors.

On July 10, 1979, bids for the contract were publicly opened, and it was determined that the plaintiff was the low bidder and Griffin Construction Company (Griffin) was the second lowest bidder. On July 31, 1979, Griffin filed a protest challenging the plaintiff's status as a small business concern. The protest was forwarded to the Atlanta Regional Office of the Small Business Administration (S.B.A.). The acting Assistant Regional Administrator for Procurement Assistance for the United States' Small Business Administration, Region IV, decided that the plaintiff failed to qualify as a small business concern. The plaintiff has appealed this decision to the Chairman of the Size Appeals Board of the S.B.A., and the appeal is presently pending.

On August 23, 1979, without any notice to the plaintiff the contract was awarded to Griffin. The plaintiff moves for an injunction against the present contract and asks that the defendant be enjoined from awarding the contract to anyone other than the plaintiff. The court concludes that the preliminary injunction should be granted.

The granting or denying of a preliminary injunction rests in the sound discretion of the district court. *Clements Wire & Mfg. Co. v. N.L.R.B.*, 589 F.2d 894 (5th Cir. 1979); *Johnson v. Radford*, 449 F.2d

115 (5th Cir. 1971). This discretion, however, is not without limitations and must be exercised in view of four prerequisites established for issuance of a preliminary injunction: (1) a substantial likelihood the plaintiff will prevail on the merits, (2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted, (3) the threatened injury to the plaintiff must outweigh the threatened harm an injunction may cause the defendants, and (4) that granting the preliminary injunction will not disserve the public interest. *Clements Wire & Mfg. Co. v. N.L.R.B.,* 589 F.2d 894 (5th Cir. 1979); *Barrett v. Roberts,* 551 F.2d 662 (5th Cir. 1977); *Allison v. Froehlke,* 470 F.2d 1123 (5th Cir. 1972). The evidence presented for each of those criteria is balanced by the court on a sliding scale analysis: a much stronger showing on one or more of the necessary factors lessens the amount of proof required for the remaining factors. *Texas v. Seatrain International, S.A.,* 518 F.2d 175 (5th Cir. 1975); *Siff v. State Democratic Executive Committee,* 500 F.2d 1307 (5th Cir. 1974).

### 1. LIKELIHOOD OF THE PLAINTIFF'S PREVAILING ON THE MERITS

In determining the plaintiff's likelihood of success on the merits, the court is not concerned at this time with the S.B.A.'s existing determination of the plaintiff's size, nor the plaintiff's appeal from that determination, nor with the propriety of the contracting officer's awarding the contract to Griffin as quickly as he did; rather, the court's focus is on the nature of the protest filed against the plaintiff and its timeliness. The court directs its attention here because if the protest was not a timely one, the size of the plaintiff is a factor which the defendant should never have considered in deciding to whom to award the contract, since by doing so the defendant would have committed a violation of his duty in the procurement process.

■ The Armed Services Procurement Regulations permit a contracting officer or an interested party (here a competitor) to challenge by a written protest the small business status of any bidder. 32 C.F.R. §§ 1–703(b)(1) and (b)(2). The parties to the action differ on their designation of the challenge filed: the defendant maintaining that the challenge was by a contracting officer; the plaintiff contending it was by a competitor.

How the challenge is designated is crucial because, as the defendant concedes, if designated as a competitor's protest it would not have been timely (it was delivered and filed more than five days after the bid opening date), 32 C.F.R. § 1–703(b)(1), but if viewed as a contracting officer's protest it would be timely (they are always timely), 32 C.F.R. § 1–703(b)(2). After a review of the evidence, the court is unable to view the protest as anything but a competitor's protest and, therefore, an untimely protest.

Regardless of whether a protest is timely, the S.B.A. is notified and the protest is forwarded to it for a determination of size which, if the protest is untimely, will affect only future procurements; whereas, a timely protest affects the protested procurement as well. The provision covering untimely protests received prior to the award provides as follows:

A protest which is not timely, even though received before award, *shall* be forwarded to the Small Business Administration district office . . . with a notation thereon that the protest is not timely. The protestant *shall* be notified that his protest cannot be considered on the instant procurement but has been referred to SBA for its consideration in any future actions. . . .

32 C.F.R. § 1–703(b)(1)(b) (emphasis added).

In the instant action, the defendant's agent, A. H. Demos, notified the S.B.A. by letter that a timely protest had been filed, but not only does the letter itself reference 32 C.F.R. § 1–703(b)(1)(a), which is the regulation covering timely protests by a *disappointed bidder*, the letter goes on to reference specifically in its final sentence that the protest is "the protest of Griffin Construction Company." The defendant, as stated previously, has conceded that if the

protest was Griffin's it was untimely and could be applicable only to future procurements.

Thus, it was clearly error both to state that the protest by Griffin was timely and to consider such protest in awarding the instant procurement. If, somehow, the protest were to be viewed as one by a contracting officer, it would be timely. This, of course, is the view the defendant urges upon the court; however, to view it in such a manner would be contrary to all the evidence because, as pointed out above, the letter clearly indicates that the protest is Griffin's and, furthermore, Mr. Demos himself testified that he was neither making a contracting officer's protest nor even intending to make a contracting officer's protest. Indeed, the letter fails in every regard to meet the requirements of a contracting officer's protest as set forth in 32 C.F.R. § 1–703(b)(2) in that it does not "contain a statement of the basis for the protest [by the contracting officer] together with available supporting facts." Additionally, Mr. R. R. Boyer, who is the head of the New Procurement Branch, Southern Division Naval Facilities Engineering Command, testified that he did not issue a contracting officer's protest; while it is true that Mr. Robert J. Robertory, the contracting officer for Naval Facilities Engineering Command, did authorize the filing of the protest with the S.B.A., he testified that it was his policy to authorize the filing of all protests whether timely or untimely. This is in keeping with 32 C.F.R. § 1–703(b)(1)(b), which directs that just such a filing be made, but if it is untimely then it is to be used only when considering future procurements. Certainly this authorization to file the protest which is mandated by regulation does not in itself constitute a protest by a contracting officer.

The evidence, therefore, clearly shows that the protest was an untimely one by the competitor Griffin. Hence, the procurement procedure involved a clear and prejudicial violation of the applicable regulations and because of the defendant's failure to follow the Armed Service's own regulations, the plaintiff was improperly excluded from consideration for the award of the contract when, as low bidder, there certainly existed more than a substantial likelihood of its being awarded the contract. Thus, the plaintiff satisfies the first prerequisite.

## 2. IRREPARABLE INJURY

The plaintiff must also satisfy the prerequisite of suffering irreparable injury if the preliminary injunction is not granted. It is settled law that the principal and overriding element of this prerequisite is irreparable harm resulting from the absence of an adequate remedy at law. *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Jets Services, Inc. v. Hoffman*, 420 F.Supp. 1300 (M.D.Fla.1976).

The plaintiff concedes the existence of a legal remedy: a cause of action for monetary damages in the United States Court of Claims. *Keco Industries, Inc. v. United States*, 428 F.2d 1233, 192 Ct.Cl. 773 (1970). That remedy, however, permits the plaintiff to collect only damages for bid preparation costs—estimated at $10,000.00.

It is the plaintiff's assertion that those damages are clearly inadequate, since they may not include the loss of profits that the plaintiff would have made on this more than two million dollar contract had it been awarded the contract in question. The court agrees. *See Ainslie Corp. v. Middendorf*, 381 F.Supp. 305, 307 (D.Mass.1974). The federal courts have recognized the inadequacy of the Court of Claims remedy. In *General Electric Co. v. Seamans*, 340 F.Supp. 636 (D.D.C.1972), the court held that the action for damages in the Court of Claims was an inadequate remedy because it did not fully compensate the loss sustained by the frustrated bidder. While recognizing authority to the contrary, this court finds that the Fifth Circuit takes the position that in an appropriate case equitable relief to an aggrieved bidder is proper. *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260 (5th Cir. 1978); *Hayes International Corp. v. McLucas*, 509 F.2d 247 (5th Cir. 1975). The court believes the instant case to be appropriate for injunctive relief and

finds the plaintiff has met his burden on this prerequisite.

### 3. THE PLAINTIFF'S HARM OUTWEIGHS THE DEFENDANT'S POSSIBLE HARM

The plaintiff must demonstrate that the threatened injury to it if the injunctive relief is denied outweighs the threatened harm an injunction may cause the defendant. As explained above, without the benefit of equitable relief the plaintiff will be unable (even as low bidder) to receive the instant procurement, since the defendant has already notified Griffin that it will be awarded the contract; therefore, the plaintiff would not be able to recover the profits lost by not being awarded the contract. Moreover, the failure of the plaintiff to receive the procurement was due solely to the defendant's failure to comply with his own regulations. Thus, the plaintiff will be injured to the extent of its lost profits unless the court grants an injunction against the present contract and enjoins the defendant's awarding of the contract to anyone but the plaintiff, Collins & Company (pursuant to its bid of July 10, 1979).

The defendant, on the other hand, will be harmed to the extent it has to return a third-party, Griffin, to its status as of the date prior to the awarding of the contract to Griffin on August 23, 1979, less the amount saved by accepting the low bid. It is the court's conclusion that the harm to the plaintiff, if equitable relief is denied, outweighs that to the defendant if it is granted, particularly in view of the fact that the defendant's harm, if any, flows directly from his failure to follow the regulations with which he is very familiar and is not the result of any action on the part of the plaintiff.

### 4. DISSERVICE TO PUBLIC INTEREST

The final prerequisite the plaintiff must satisfy is a demonstration that the issuance of the injunctive relief will not disserve the public interest. The plaintiff has clearly satisfied this requirement. Any action directed towards the plaintiff's securing of the contract is clearly within the public interest for two reasons: first, the defendant acts in the public interest when it accepts the lowest bid; and, second, the public has an interest in assuring that government officials comply with applicable regulations. *Scanwell Laboratories, Inc. v. Shaffer*, 137 U.S.App.D.C. 371, 424 F.2d 859 (D.C. Cir. 1970); *International Engineering Co. v. Richardson*, 367 F.Supp. 640 (D.D.C.1973); *General Electric Co. v. Seamans*, 340 F.Supp. 636 (D.D.C.1972).

Additionally, the Fifth Circuit has recognized the need for agencies to follow the regulations controlling government contracting as an overriding public interest. *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260 (5th Cir. 1978); *Hayes International Corp. v. McLucas*, 509 F.2d 247 (5th Cir. 1975). Finally, there has been no showing of any overriding public interest which would mandate refusal of an injunction. Thus, the plaintiff has satisfied this final prerequisite for injunctive relief.

In conclusion, the court finds that the plaintiff has carried its burden on each of the four prerequisites; moreover, when viewed under the sliding scale analysis, the plaintiff's showing becomes even plainer, since it has proven almost to a certainty its likelihood of prevailing on the merits while carrying its burden on the other factors as well. Consequently, the court holds that the plaintiff is entitled to a preliminary injunction and on September 5, 1979, entered an order granting the plaintiff's motion for a preliminary injunction.