CLARK CONSTRUCTION COMPANY, INC., Plaintiff,

v.

Federico PENA, Secretary, United States Department of Transportation, Rodney Slater, Administrator, Federal Highway Administration, James F. Butts, Director, State of Alabama Department of Transportation, Defendants.

Civ. A. No. 95–D–447–N.

United States District Court, M.D. Alabama, Northern Division.

June 26, 1995.

James H. Anderson, Montgomery, AL, Keith J. Harrison, and Jeffrey L. Poston, Washington, DC, for plaintiff.

Redding Pitt, U.S. Attorney, Montgomery, AL, for defendants.

## MEMORANDUM OPINION

DE MENT, District Judge.

### BACKGROUND

Before the court is plaintiff Clark Construction Company, Inc.'s (hereafter "Clark Construction") motion for preliminary injunction filed March 30, 1995. The plaintiff seeks to enjoin the Federal Highway Administration (hereafter "FHWA"), the U.S. Department of Transportation (hereafter U.S. DOT), and the Alabama Department of Transportation (hereafter ADOT) from depriving it of a construction contract which the State of Alabama originally proposed to award Clark Construction. The plaintiff's low bid was rejected by the FHWA after the agency discovered that the project plans and specifications that it approved and submitted to prospective bidders contained an error relating to a traffic control note. Upon discovering the omitted term, the FHWA directed ADOT to reject all of the then public bids and solicit bids a second time. Two bids, one of which belonged to the plaintiff, were submitted in the second let. Both bids were significantly lower than the bids submitted in the first let, notwithstanding the fact that the previously omitted traffic control note appeared to increase the cost of the project in the view of the FHWA. The plaintiff was underbid in the second let by its competitor APAC Construction and presently, ADOT has requested that the FHWA concur in the proposed award to APAC. The plaintiff seeks in its motion for preliminary injunction to prevent the FHWA from concurring in the proposed award to APAC. Furthermore, the plaintiff has asked in its complaint that this court direct the defendants to recognize the plaintiff's original low bid as the only lawfully obtained low bid and award the construction contract accordingly. In support of its motion, the plaintiff asserts that the defendants had no statutory or legal authority to reject the originally proposed award based on an insignificant mistake that the parties agree was entirely the fault of the defendants. Furthermore, the plaintiff argues that the defendants' decisions with respect to the proposed award were both arbitrary and capricious.

On May 22, 1995, the court held an evidentiary hearing on the plaintiff's motion for preliminary injunction, the transcript of which is a part of the record. Subsequent to that hearing, the parties were given the opportunity to file additional briefs in support of, and in opposition to, the plaintiff's motion. After careful consideration of the record as a whole and the applicable law, the court finds that the plaintiff's motion for preliminary injunction is due to be granted.

### JURISDICTION AND VENUE

This is an action arising under the United States Constitution, the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* and the Federal Highway Act, 23 U.S.C. §§ 101 *et seq.* Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is properly founded upon 5 U.S.C. § 8912 and 28 U.S.C. § 1391(e).

### STANDING

■ The plaintiff's legal standing to appeal the actions of the respective agency defendants lies in the Administrative Procedure Act. Section 702 of that Act provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review" thereof. The court finds that the plaintiff, as an unsuccessful bidder, has standing to challenge the defendants' proposed plan to award the contract to a third party. *See Choctaw Mfg. Co., Inc. v. United States,* 761 F.2d 609 (11th Cir.1985).

### FINDINGS OF FACT [1]

The construction contract in question arose out of a Federal Aid Project operating under

---

1. Rule 52(a) of the Federal Rules of Civil Procedure provides that "in granting or refusing interlocutory injunctions, the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action." Accordingly, the court makes the following findings of fact, which the court deems controlling in this action.

the Federal Highway Act.[2] The project involves a joint effort by the FHWA and the State of Alabama to widen a portion of U.S. Highway 280, which is located in Jefferson County, Alabama. The terms of the State and Federal relationship in this matter are set forth in an operating agreement generated by the FHWA and the State of Alabama. The "Agreement" incorporates the statutory and regulatory requirements set forth in the Federal Highway Act and the Intermodal Surface Transportation Efficiency Act of 1991.

Under the law incorporated in the above mentioned Agreement, the State is required to prepare a document setting forth the specifications of the project.[3] The document itself is referred to as the Plans, Specifications & Estimates or "PS & E". The PS & E's specific purpose is to describe the location and design features and the construction requirements in sufficient detail so as to facilitate construction, contract control, and the estimation of construction costs. 23 C.F.R. § 630.205(b). Upon completion, the PS & E is submitted to the Division Administrator of the FHWA for approval. 23 C.F.R. § 630.205(c). The State's plan must be approved by the FHWA before the State will be allowed to proceed with soliciting bids.[4] Upon approval of the plan, the State may then begin the sealed-bidding process used to select a contractor. The Federal Highway Act provides that a contract be "awarded only on the basis of the lowest responsive bid submitted by a bidder meeting the criteria for responsibility as may have been established by the SHA [Applicable State Highway Authority] in accordance with Section 635.110." [5]

In the present case, ADOT and the FHWA spent a considerable amount of time discussing the construction specifications which would be included in the ADOT PS & E. One of the points that was discussed and eventually agreed upon related to the project "construction sequence." Among other things, the construction sequence in this PS & E was to include a note limiting when traffic lanes could be closed for construction work. Both the FHWA and ADOT agreed that the note would alert prospective bidders that traffic lanes could not be closed from 6:30 a.m. to 7:00 p.m. on weekdays. Apart from that restriction, lane closures were to be permitted for construction purposes on weeknights and weekends.

Notwithstanding the Agencies agreement as to that particular note, the PS & E that was ultimately drafted by ADOT and submitted to the FHWA for approval did not contain the above mentioned restriction. Instead, the PS & E traffic control note simply prohibited lane closures on weekdays from 6:30 a.m. to 8:30 a.m. and from 3:30 p.m. to 6:30 p.m. ADOT submitted its PS & E, which included the traffic control note error, to the FHWA for approval. The FHWA formally approved the PS & E in its entirety and allowed the State to begin soliciting bids.

Four companies submitted bids in response to ADOT's contract advertisement. The Plaintiff company was among that group. All of the prospective bidders had been pre-qualified as directed by state law. The Plaintiff was the low bidder at $7,879,999.92. The second lowest bid was submitted by APAC construction company.

The court's conclusions of law are contained in the next section.

2. Title 23 of the United States Code sets forth the legal framework for the Federal–Aid highway program. The Federal–Aid highway program is a cooperative program for each individual State. Under the program, the individual States construct, maintain, and own the highways, roads, and bridges that are found within their respective borders, including those that receive federal aid. To preserve its eligibility for federal aid, a State submits selected highway and bridge projects to the FHWA for its approval. 23 U.S.C. § 105.

3. In 23 CFR Part 625, the Federal Highway Administrator has set out the design standards, specifications, policies, guides, and references that are acceptable to FHWA for application in the geometric and structural design of highways. *See* 23 CFR § 625.1.

4. Since the FHWA provides in excess of 75% of the funding for a project, it is granted substantial oversight and approval authority in a number of areas. *See* 23 CFR § 1.3.

5. 23 C.F.R. Section 635.114; *see also* 23 U.S.C. Section 112(b)(1).

APAC's bid was $7,906,508.82 (a difference of only $26,000.00).

ADOT reviewed the Plaintiff's low bid and found that it met all requirements and specifications. Accordingly, the Plaintiff's bid was accepted by ADOT and it was selected as the proposed contract awardee. After notifying the Plaintiff on December 5, 1994, the ADOT Bid Review Committee submitted its selection to the FHWA for its official concurrence as called for by the Agreement and the Federal Highway Act. 28 U.S.C. § 112. However, Joseph Wilkerson, Division Administrator for the FHWA, refused to concur in the proposed award. Wilkerson rejected the award upon discovering that the PS & E that his office had approved did not contain the correct traffic control note regarding lane closures.[6]

When ADOT was informed of the FHWA's rejection of its proposed awardee, it contacted the Plaintiff to ask whether their bid reflected an intent to close traffic lanes only on weekday nights and on weekends. The Plaintiff informed ADOT that it did so reflect, and that the change in the PS & E would have no effect on its bid.[7] The Plaintiff further explained to ADOT that it would have been impractical for its construction crews to have attempted any day time work during weekdays as allowed under the incorrect traffic control note because the erection of barriers and other safety devices would have left virtually no time to work before the next "rush hour" period.[8] Therefore, after changing the PS & E to specifically include the corrected traffic control note as suggested by Wilkerson, ADOT resubmitted the

Plaintiff's name to the FHWA as its proposed awardee.

Again, Wilkerson rejected the proposed award to the Plaintiff. Furthermore, Wilkerson directed ADOT to resolicit bids for the project. According to the Plaintiff, this action by the FHWA seriously impaired its chances of being the low bidder for a second time because its original bid, which was then public knowledge, served as a "bid ceiling" for its competitors. Because of this, Clark Construction began to pursue administrative remedies. Clark Construction formally requested that ADOT appeal the decision by the Montgomery Federal Highway Administration Office to the Regional Federal Highway Administration in Atlanta. ADOT refused to do so. Next, Clark Construction filed a bid protest with the General Accounting Office ("GAO"). However, the GAO dismissed the bid protest claiming that it lacked jurisdiction over the matter.

Having failed to obtain relief before the second solicitation of bids, Clark Construction submitted a second bid on the project. APAC construction was the only other company to submit a second bid. Both bids were lower than Clark Construction's low bid in the first let. APAC's bid was $7,246,544.00, while the plaintiff's bid was $7,423,854.00. APAC underbid the Plaintiff by $177,310.00 in the second let.

ADOT has notified APAC that it has been selected as its proposed contract awardee and APAC's name has been submitted to the FHWA for concurrence. The FHWA has withheld official concurrence up to the present time.[9]

---

6. According to the materials submitted by the parties, the FHWA has made no claim that Clark Construction's bid was, itself, defective. Nor has the FHWA claimed that the plaintiff's low bid was the product of unbalanced bidding.

7. According to the calculations of the plaintiff, only 15% of the actual construction work required for this project would necessitate the closure of any traffic lanes. *Declaration of Colby Clark*, at ¶ 12.

8. The Plaintiff's representation to ADOT regarding the practicality of closing traffic lanes on weekdays is supported by the declarations of Henry T. Hagood, the Executive Vice President

of the Alabama Branch of the Association of General Contractors, and Roger Bass, the President of Dunn Construction Company.

9. This case was originally filed in the United States District Court for the District of Columbia. CA No. 95–615–SSH. The plaintiff moved that court to issue a Temporary Restraining Order, and a hearing was held on the matter. On April 3, 1995, the plaintiff's motion was granted. Immediately thereafter, the case was transferred to this court. The defendant's have assured the court that they will take no further action on the proposed award until such time as the court makes its ruling. Hence, the Temporary Restraining Order was not renewed.

## LEGAL STANDARDS AND CONCLUSIONS OF LAW

### Standard for Obtaining a Preliminary Injunction

While Federal Rule of Civil Procedure 65 covers only procedural requirements for issuing a preliminary injunction, federal courts have interpreted Rule 65 to incorporate several common law substantive requirements. Generally, the party moving for a preliminary injunction must satisfy the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the preliminary injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm that the injunction may cause the opposing party; and (4) that granting preliminary injunctive relief is not adverse to the public interest. *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 159 (11th Cir.1990); Fed. R.Civ.P. 65. The purpose of a preliminary injunction is to protect the movant from irreparable injury and to preserve the status quo until the district court renders a meaningful decision on the merits. *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567 (5th Cir.1974).

■ In determining whether the plaintiff should prevail, the court balances the evidence proffered for each element. Hence, a heavier showing on one or more of the criteria will reduce the weight of proof required for the other factors. *Georgia Gazette Pub. Co. v. United States Dept. of Defense*, 562 F.Supp. 1004, 1008 (S.D.Ga.1983) (citation omitted). Finally, in determining the propriety of interim injunctive relief, the court bears in mind at all times that in bid protest disputes involving government procurement contracts, the court "must apply these precepts of judicial restraint more stringently, especially with respect to the factor of the likelihood of plaintiff['s] success on the merits." *Saco Def. Sys. Div., Maremont Corp. v. Weinberger*, 606 F.Supp. 446, 450 (D.Me.1985) (citations omitted).

### The Plaintiff's Likelihood of Success on the Merits

Before turning to the merits of the underlying case, the court must address two threshold matters. First, the court must ascertain the legal standard for reviewing the defendants' decision to reject the plaintiff as the originally proposed contract awardee. Second, the court must determine the amount of deference that is to be accorded that decision.

The Administrative Procedure Act (hereafter "APA"), 5 U.S.C. §§ 701–706, restricts the scope of judicial review in evaluating agency action. The court may overturn the agency decision only if: "(1) [T]he procurement official's decisions on matters committed primarily to his [or her] own discretion has no rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations." *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1271 (5th Cir.1978) (citation omitted). *See also Choctaw Mfg. Co., Inc. v. United States*, 761 F.2d 609, 616 (11th Cir. 1985); *Mark Dunning Indus., Inc. v. Cheney*, 726 F.Supp. 810, 814 (M.D.Ala.1989) (Thompson, J.), *aff'd* 934 F.2d 266 (11th Cir. 1991).

This standard recaps the provisions of the APA, which provide that

> [t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> . . . . .
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]

5 U.S.C. § 706, (quoted in *Shoals Am. Indus., Inc. v. United States*, 877 F.2d 883, 887 (11th Cir.1989)).

■ When reviewing agency action under the APA, the court must accord great deference to the agency's evaluation of bids and must not supplant its own judgment for that of an agency simply because the court

finds the reasoning " 'ill-considered, or to represent the less appealing alternative solution available.' " *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1299 (D.C.Cir.1971) (quoted in *Kinnett Dairies, Inc.,* 580 F.2d at 1271); *see also Shoals Am. Indus., Inc.,* 877 F.2d at 888 (reversing the district court for failing to afford sufficient weight to a GAO decision). In other words, the court should enjoin a government contract determination of this kind only if "there has been a clear violation of duty by the procurement officials." *Kinnett Dairies, Inc.,* 580 F.2d at 1271.

■ However, while the court should allow administrative agencies to function with minimum interference by the judiciary, "uncritical deference" to an Agency decision is inappropriate. *Shoals Am. Indus., Inc.,* 877 F.2d at 889. "[T]here certainly may be instances where the District Court will find procurement illegality that the [Agency] failed to recognize, or at any event failed to correct." *M. Steinthal & Co.,* 455 F.2d at 1305 (quoted in *Latecoere Int'l, Inc. v. United States Dep't of the Navy,* 19 F.3d 1342, 1356 (11th Cir. 1994)).

■ With these controlling principles in mind, the court turns to the underlying merits of the case and the question of whether the plaintiff is likely to prevail at trial. Here, the plaintiff proceeds under both prongs of the *Kinnett Dairies, Inc.* analysis, arguing first that the decisions made by the defendants with respect to the proposed award in the first let had no rational basis, and second, that those decisions amounted to a clear and prejudicial violation of applicable statutes and regulations.

In brief, the plaintiff contends that the FHWA arbitrarily decided to overstep its administrative bounds when it refused to concur in the award originally proposed by ADOT. According to the plaintiff, the only basis set forth by federal law upon which the FHWA may reject a State's proposed awardee is in the case of unbalanced bids. 23 C.F.R. § 635.114. Apart from unbalanced bids, the plaintiff argues, the federal regulations identify no basis upon which the FHWA may withhold its official concurrence.

While the plaintiff's claim that unbalanced bidding serves as the only basis for federal rejection is subject to debate, one thing is indeed certain; the FHWA's authority to reject a state's proposed award is limited. 23 U.S.C. § 112(b)(1), provides in part:

"Contracts for the construction of each project shall be awarded only on the basis of the lowest responsive bid submitted by a bidder meeting established criteria of responsibility. *No requirement or obligation shall be imposed as a condition precedent to the award of a contract to such bidder for a project, or to the Secretary's concurrence in the award of a contract to such bidder, unless such requirement or obligation is otherwise lawful and is specifically set forth in the advertised specifications.*"

(emphasis supplied).

As yet, the defendants have failed to direct this court's attention to a single federal statute or regulation that identifies the omission of a traffic control note in an already approved PS & E as a basis for withholding official concurrence. Nor has the court been apprised of a provision in the original PS & E that notified prospective bidders that approval of the apparent low bidder was subject to the FHWA's determination that the already approved PS & E contained no mistakes. Because of this fact, it would appear that the defendants' conduct was indeed contrary to applicable federal law.

■ However, the defendants attempt to justify their decisions by pointing to other areas of federal and state authority. First, the FHWA states in passing that "[a] PS & E which is erroneous is of no material use to either the State or to FHWA, since neither would wish to follow or impose its obligations." *Federal Defendants' Reply Memorandum,* p. 10, ¶ 1. To begin with, this argument merely underscores the importance of carefully reviewing contracting documents like PS & E's for unintended errors. The defendants, not the prospective bidders, are charged with the duty to insure that such a document contains all of the agreed to terms no matter how trivial. Federal acquisition regulations specifically provide that a bid solicitation "must describe the require-

ments of the government clearly, accurately, and completely." 48 C.F.R. § 14.101(a). If the traffic control note regarding lane closures was so critical to the integrity of the bidding process then the FHWA would have certainly corrected the problem long before it gave its approval.

In any event, the conduct of ADOT following the discovery of the mistake tends to refute the FHWA's contention that the PS & E was of no material use. ADOT was obviously satisfied that the PS & E error was not significant enough to call into question the overall reliability of the plaintiff's bid. As the federal defendants have pointed out, the State had the power to reject the plaintiff as its proposed awardee if it truly believed that the omission effected the overall integrity of the bid. *See* § 39-2-6, Code of Alabama (1994). Yet, the State did not choose to exercise its power to do so, and, as stated above, the federal defendants did not originally have the power to do so.

■ The defendants' second argument in opposition to the plaintiff's motion is more compelling than the first but is still equally unpersuasive. The defendants contend that the plaintiff's assurances to ADOT officials that the omitted traffic control term would not affect its bid was an impermissible attempt to negotiate with the State Highway Authority. According to the federal defendants, these communications were violative of clearly established federal regulations and policies which are designed to maintain the integrity of the competitive bidding process. Specifically, the defendants maintain that they were forced to reject the plaintiff as the proposed awardee because 23 U.S.C. § 112(c), and a FHWA Policy Memorandum issued by former Federal Highway Administrator Ray Barnhart, directed them to do so.

23 U.S.C. § 112(c) provides the following:

"(c) The Secretary shall require as a condition precedent to his approval of each contract awarded by competitive bidding pursuant to subsection (b) of this section, and subject to the provisions of this section, a sworn statement, executed by, or on behalf of, the person, firm, association, or corporation to whom such contract is to be awarded, certifying that such person, firm,

association, or corporation has not, either directly or indirectly, entered into any agreement, participated in any collusion, or otherwise taken any action in restraint of free competitive bidding in connection with such contract.

The former Federal Highway Administrator sought to clarify certain aspects of § 112(c) in a memorandum dated April 30, 1985. That memorandum states the following with regard to state highway authorities that engage in negotiations with a low bidder in order to lower the price of construction contracts:

"The State highway agencies do not have the authority under any circumstances to negotiate with a bidder or bidders before an award to reduce the price of a construction contract. Such negotiations with the apparent low bidder are essentially bid rigging in reverse. They subvert the fair and open competitive bidding process, under which qualified firms are entitled to an equal opportunity to compete for contracts, and invite favoritism and collusion as well as legal difficulties with unsuccessful bidders. In short, we do not believe negotiations with the apparent low bidder promote the public interest. We remain a strong advocate of open and competitive bidding, which traditionally has produced quality construction at a fair and reasonable cost."

This court finds that the defendants' argument fails for two reasons. First, the communications between the plaintiff and ADOT differed substantially from the behavior addressed in § 112(c) and the Administrator's policy memorandum. ADOT clearly did not seek by its limited communication with the plaintiff to gain a reduction in the price of the construction contract. Nor did the plaintiff attempt to thwart the purposes of the competitive bidding process by explaining to ADOT that the omitted note would have no effect on its bid. The communication simply served as a means for ADOT to gauge the materiality of the omitted note. Upon finding that the mistake was in fact immaterial, ADOT resubmitted the plaintiff's name for approval to the FHWA. While the court believes that this sort of communication is

certainly not advisable, it is equally apparent to the court that it did not amount to the kind of "reverse bid rigging" that the FHWA Administrator addressed in his memorandum.

In addition, the defendants' argument fails because it appears to the court that the FHWA's attempt to justify its decision by alluding to concerns about harm to the competitive bidding process was pretextual. The record in this case demonstrates that the communications in question took place after the plaintiff was informed that the FHWA would refuse to concur in the award based upon the omission of the traffic control note. Only after the Plaintiff was so notified did ADOT inquire as to whether the mistake would have an effect on the plaintiff's bid. When ADOT was satisfied that there was no need to exercise its power to reject the bids, it submitted the plaintiff's name a second time. It was then that the Regional Administrator tried to justify his decision by raising concerns about potentially improper negotiations. Therefore, the court finds that the defendants' assertion that they were required to reject the plaintiff's proposed award because of federal policies prohibiting pre-award negotiations is simply an attempt to put forth some legal authority to justify their decision. The court concludes that the defendants have failed in their attempt to do so.

Additionally, the court finds no merit to the federal defendants' claim that its decisions are not subject to review because the State ultimately exercised its broad discretion and rejected the bids from the first let. The FHWA cannot hide in the shadow of ADOT and claim that its decisions are immune from judicial review where the FHWA forced ADOT to exercise its power or lose federal funding for the project. The FHWA's decision to withhold approval is what gave rise to this action, and the court's power to impose an equitable remedy is not thwarted by this administrative sleight of hand. As the 11th Circuit Court of Appeals pointed out, "[a] District Court also has the authority to order a government contracting officer to award a contract to an unsuccessful bidder where it is clear that but for the unlawful conduct of the contracting officer, the contract would have gone to the unsuccessful bidder." *Choctaw Manufacturing Co. v. United States*, 761 F.2d 609, 620 (11th Cir.1985). In this case, it appears clear that the plaintiff would have received the contract in question were it not for the unlawful conduct of the federal defendants. Thus, the State's ultimate decision to resolicit bids as directed by the FHWA does not bar equitable relief.

Finally, the court turns to the plaintiff's argument that it is entitled to preliminary injunctive relief because the defendants' decision to resolicit bids created an "impermissible auction" situation for which there was no rational basis. There is little doubt that this assertion has merit.

As the defendants have pointed out in brief, the process of awarding federal contracts is a complicated one. Mistakes and unintended omissions are very often a part of that process. However, the competitive system under which contractors of all sizes submit sealed bids would not be able to survive if the respective agency defendants were allowed to cure all of their mistakes by constantly resoliciting bids. To allow the defendants to do so without clear legal authority would inject a level of uncertainty into the bidding process that would eventually cause irreparable harm. The facts of this case provide an excellent example of why the policy of submitting sealed bids is so critical. Large companies will almost always have the ability to under bid a smaller firm whose original low bid has become a "price ceiling." The defendants in this case cannot possibly claim in all candor that they expected the addition of the traffic control note in the PS & E to cause bids to increase. The fact that a second let prompted APAC Construction Company to reduce its bid by $659,964.82 is a clear indication of why the system of submitting sealed bids should not be disturbed lightly. The fact that it was disturbed for the reasons given in this instance is, in this court's opinion, irrational. Accordingly, the court finds that the plaintiff has shown a probability of success on the merits.

## Irreparable Injury

■ The party moving for preliminary injunctive relief also must show irreparable injury. If the damages are calculable in money, then the injury is not irreparable. *Collins & Co., General Contractors, Inc. v. Claytor,* 476 F.Supp. 407, 410 (N.D.Ga.1979) (stating that "the principal and overriding element of this prerequisite is irreparable harm resulting from the absence of an adequate remedy at law") (citations omitted). Hence, the doctrine that the legal remedy must be inadequate before equity will act is inextricably intertwined with the irreparable injury element.

■ Here, the court finds that the plaintiff lacks an adequate remedy at law. The plaintiff's only alternative to injunctive relief is an action for money damages in the United States Court of Claims. *See generally Keco Indus., Inc. v. United States,* 428 F.2d 1233, 192 Ct.Cl. 773 (1970). Courts have found that generally monetary relief, i.e., recovery of bid preparation costs, is insufficient to compensate an unsuccessful bidder for the wrongful award of a government procurement contract:

"It is the plaintiff's assertion that those damages [bid preparation costs] are clearly inadequate, since they may not include the loss of profits that the plaintiff would have made on this more than two million dollar contract had it been awarded the contract in question. The court agrees. *See Ainslie Corp. v. Middendorf,* 381 F.Supp. 305, 307 (D.Mass.1974). The federal courts have recognized the inadequacy of the Court of Claims remedy. In *General Electric Co. v. Seamans,* 340 F.Supp. 636 (D.D.C.1972), the court held that the action for damages in the Court of Claims was an inadequate remedy because it did not fully compensate the loss sustained by the frustrated bidder. While recognizing authority to the contrary, this court finds that the Fifth Circuit takes the position that in an appropriate case equitable relief to an aggrieved bidder is proper. *Kinnett Dairies, Inc. v. Farrow,* 580 F.2d 1260 (5th Cir.

1978); *Hayes International Corp. v. McLucas,* 509 F.2d 247 (5th Cir.1975). The court believes the instant case to be appropriate for injunctive relief...."

*Collins & Co., General Contractors, Inc.,* 476 F.Supp. at 410 (citations omitted).[10]

■ Moreover, the court finds that the right to fair and equal treatment in bidding for government procurement contracts is a statutory right, which can be adequately protected only by the issuance of injunctive relief. *See National Maritime Union of America v. Commander, Military Sealift Command,* 824 F.2d 1228, 1237 (D.C.Cir. 1987). Accordingly, the court finds that a preliminary injunction is necessary to preserve the status quo pending trial because otherwise irreparable harm to the plaintiff will result.

## Plaintiff's Irreparable Injury Outweighs Any Harm to the Interested Parties

■ The court also finds that the harm that will be caused to the defendants by the granting of a preliminary injunction is outweighed by the irreparable injury that the plaintiff and similarly situated contractors will suffer if injunctive relief does not issue. The court is mindful of the fact that an injunction at this stage will cause a serious delay in the completion of the overall Highway 280 construction project. However, the court finds that such a delay is necessary where the need to impose an equitable remedy is so apparent.

## Public Interest

■ The public interest factor is generally an elusive one in that opposing parties can often make reasonable arguments that the public interest favors each side of the dispute. In this case, the defendants make a compelling argument that the public is best served when they are allowed to exercise their administrative discretion with little interference from the courts. Usually, this court would be inclined to agree. However,

10. Decisions of the former Fifth Circuit filed prior to October 1, 1981 constitute binding precedent in the Eleventh Circuit. *Bonner v. City of* *Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

in this instance, the court finds that the public would be ill-served if the court sent the message to future low bidders that their chances of obtaining a government contract are largely dependent upon whether the defendants have refrained from making careless mistakes of questionable importance. For this reason, the court finds that the public's right to have government contracts solicited in a proper manner outweighs any administrative inconvenience or additional cost that the defendants might incur.

### Bond

 Rule 65(c) of the Federal Rules of Civil Procedure provides the following:

> "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

The amount of the bond is within the sole discretion of the trial judge. *See System Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131 (3d Cir.1977) (stating that although the trial judge has substantial discretion in setting the amount of the bond, it is reversible error to refuse a bond unless there is no risk of monetary loss).

 Here, the court finds that the plaintiff should post a security bond. Based upon the plaintiff's likelihood of success on the merits, the court finds that the plaintiff shall post a properly conditioned security bond in the amount of $50,000.00 to compensate any losses the defendants may incur if wrongfully enjoined.

### Conclusion

Accordingly and for the foregoing reasons, the court finds that the plaintiff's motion for a preliminary injunction is due to be granted. An order in accordance with this memorandum opinion shall be entered separately.

### *PRELIMINARY INJUNCTION*

In accordance with the attached memorandum opinion and Rule 65(d) of the *Federal Rules of Civil Procedure*, it is CONSIDERED and ORDERED that plaintiff Clark Construction Co., Inc.'s motion for preliminary injunction be and the same is hereby GRANTED pending a final adjudication of the case on the merits and that the defendants Federico Pena, Secretary; United States Department of Transportation; Rodney Slater, Administrator; the Federal Highway Administration; James F. Butts, Director of the State of Alabama Department of Transportation; and their officers, agents, servants, employees and attorneys and all other persons in active concert or participation with them who receive actual notice of this preliminary injunction be and they are hereby PRELIMINARILY ENJOINED from concurring in or approving the award of Alabama Project MAAF–DBAAF–214(37) to any company other than Clark Construction Company, pending a trial on the merits.

It is further CONSIDERED and ORDERED that the plaintiff post a security bond with the clerk of the court in the amount of $50,000, conditioned as provided by law.